IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**ANTHONY ELLIS,**

    **Plaintiff,**

v.                                          No. 12-2221-STA-tmp

**KENNETH CHRISTOPHER and
LEE PRICE,**

    **Defendants.**

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants' Motion to Dismiss (ECF No. 30) filed on June 18, 2014. Plaintiff has filed a letter in opposition to Defendants' Motion (ECF No. 34) and exhibits. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

**BACKGROUND**

On March 16, 2012, Plaintiff, a federal prisoner paralyzed from the waist down, filed this complaint under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] (ECF No. 1 at 1.) Plaintiff alleges that on March 3, 2011, Defendants Christopher and Price shackled Plaintiff for travel to a medical appointment and lifted him from his wheelchair to place him in a transport van. (*Id.*) Plaintiff alleges that Defendants lost their grip and dropped him on his back and neck on the concrete. (*Id.*) Plaintiff alleges that, after a few

---

[1] At page 2 of the complaint, Plaintiff contends that the Federal Correctional Institution ("FCI") in Memphis, Tennessee failed to comply with the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.* The ADA does not apply to the federal government, its agencies or employees. 42 U.S.C. § 12111(5)(B)(i). Any alleged claim under the ADA fails and requires no

minutes, the officers placed him back in his wheelchair and transported him to his housing unit without filling out an accident report or taking him to the medical department. (*Id.* at 2.) Ellis contends that his injuries were aggravated on May 17, 2011, when he fell in a shower that was not equipped for handicapped inmates. (*Id.*) Plaintiff alleges that despite multiple visits to the medical department, he has not received proper care, remains in constant pain, and suffers daily from his injuries. (*Id.* at 3.)

In the Motion to Dismiss, Defendants seek the dismissal of all claims against them contending that Plaintiff fails to satisfy the objective or subjective component of an Eighth Amendment claim and that they are entitled to qualified immunity. (ECF No. 30 at 9-14.) Plaintiff contends in the Response that his allegations demonstrate that Defendants showed "recklessness and disregard for safety." (ECF No. 34 at 1.)

## **STATEMENT OF MATERIAL FACTS**

The following facts are material to the instant case.

### **Background**

1. Plaintiff is currently serving a fifteen year sentence, to be followed by three years of supervised release, stemming from his conviction in the United States District Court for the Western District of Tennessee for "Felon in Possession of a Firearm," a violation of 18 U.S.C. § 922(g). *See* Exhibit 1, Declaration of Mary Ellen Graham, hereinafter "Graham Decl.," Attachment A (SENTRY computerized inmate history for inmate Anthony Ellis, Fed. Reg. No. 22149-076, dated June 13, 2014).

2. Plaintiff was designated to FCI Memphis on February 2, 2010. *Id.* at Attachment B

---

further discussion.

(SENTRY computerized inmate history for inmate Anthony Ellis, Fed. Reg. No. 22149-076, dated June 2, 2014). Plaintiff is currently designated to the Federal Correctional Institution at Fort Worth, Texas ("FCI Ft. Worth"). *Id.*

### Lieutenant Christopher

3.  Lt. Christopher approached Plaintiff on March 11, 2011, to take Plaintiff to a transport van for a non-emergency appointment. *See* Exhibit 2, Declaration of Kenneth Christopher, hereinafter "Christopher Decl.," ¶ 3.

4.  Because Plaintiff was being escorted out of the institution to an outside medical appointment, he was restrained with handcuffs, a Martin chain around his waist, and a black box to secure the waist chain. *Id.* These restraints were typical for inmates being escorted outside of the institution. *Id.*

5.  In March 2011, FCI Memphis did not have a handicapped accessible van with a motorized platform to lift inmates into the van. *Id.* at ¶. Lt. Christopher, assisted by Officer Price, wheeled Plaintiff to the van and attempted to lift him out of his chair and into the van. *Id.*

6.  Plaintiff was lifted slowly and in a manner that safely balanced his weight. *Id.* At no point did the officers lose control of Plaintiff or lose their grip on his body. *Id.*

7.  Plaintiff weighed over 200 pounds and Lt. Christopher and Officer Price were unable to complete the lift. *Id.* When the officers realized that they were unable to lift Plaintiff all the way into the van, they slowly lowered him back into his wheelchair. *Id.* Plaintiff was not dropped, nor did he fall to any degree or strike any part of his body on the van or ground. *Id.*

8.  After Plaintiff was returned to his wheelchair, he was wheeled back into the institution. *Id.* Lt. Christopher did not enter the institution at that time because he was still armed with a firearm for the outside medical escort trip. *Id.*

9.       At no time during Lt. Christopher's interactions with Plaintiff on that occasion did Plaintiff indicate that he was injured or needed medical assistance.  *Id.*

## Officer Price

10.      Officer Price approached Plaintiff on March 11, 2011, so Plaintiff could be escorted to the transport van for a non-emergency appointment.  *See* Exhibit 2, Declaration of Lee Price, hereinafter "Price Decl.," ¶ 3.

11.      Because Plaintiff was being escorted out of the institution to an outside medical appointment, he was restrained with handcuffs, a Martin chain around his waist, and a black box to secure the waist chain.  *Id.*  These restraints were typical for inmates being escorted outside of the institution.  *Id.*

12.      Officer Price assisted in attempting to lift Plaintiff out of his chair and into the van.  *Id.*  Officer Price and Lt. Christopher lifted Plaintiff slowly and in a manner that safely balanced his weight.  *Id.*  At no point did Officer Price lose control of Plaintiff.  *Id.*

13.      Because Plaintiff weighed over 200 pounds, he and Lt. Christopher were unable to complete the lift.  *Id.*  When they realized they could not complete the lift, Officer Price and Lt. Christopher slowly lowered Plaintiff back into his wheelchair.  *Id.* at ¶ 5.  Plaintiff was not dropped, nor did he fall to any degree or strike any part of his body on the van or ground.  *Id.*

14.      After Plaintiff was returned to his wheelchair, Officer Price wheeled him back to the Receiving and Discharge area.  *Id.*  Plaintiff changed his clothes in that department and was released back onto the compound.  *Id.*

15.      At no time during Officer Price's interactions with Plaintiff did he state that he was injured or that he required medical assistance.  *Id.*

## Medical Background

16. Plaintiff is a forty-six year old male with a history of paraplegia to his lower extremities resulting from a gunshot wound to his lower back. He is assisted by a wheelchair for his activities of daily living. He suffers from lower back pain as a result of his previous injuries. Exhibit 1, Graham Decl., ¶ 6.

17. On March 11, 2011, Plaintiff was to be taken to an outside medical appointment regarding hearing aids. *Id.* at ¶ 7.

18. Plaintiff returned to Health Services and self-reported to a health practitioner that he had been "accidentally" dropped by the van officers when they attempted to place him in the van. *Id.* at Attachment C (Bureau of Prisons Chronological Medical Record for inmate Anthony Ellis, Fed. Reg. No. 22149-076), record dated March 11, 2011, 13:56. The accuracy of this complaint was not confirmed by Health Services. *Id.* at ¶ 7 n.1.

19. Plaintiff complained that his back and right side hurt from "nagging" pain. *Id.* at Attachment C, record dated March 11, 2011, 13:56. Plaintiff rated his pain a 5 on a scale of 1–10. *Id.* Examination revealed no visible injuries, no swelling, no gross deformities of the right lower back and no tenderness upon palpation. *Id.* Plaintiff was given Ibuprofen for the pain and a lumbar x-ray was ordered. *Id.* Plaintiff was told to return to Health Services if needed.

20. On March 12, 2011, Health Services personnel responded to Plaintiff's housing unit after Plaintiff reported that he was having difficulty breathing and reported upper chest and spinal pain. *Id.* at record dated March 12, 2011, 08:12. His breath rate was recorded as shallow with no evidence of central cyanosis or nasal flaring. *Id.* Plaintiff was placed on a spinal board with neck immobilization and transported to Health Services. *Id.* Plaintiff reported pain in multiple locations to be a 10, with severe pain in his lower back and ribs. *Id.* at record dated March 12,

2011, 08:59.

21. Plaintiff was transferred to a local hospital for x-ray examination and treatment of possible broken ribs. *Id.* at record dated March 12, 2011, 08:12.

22. That evening, Plaintiff returned from the hospital with no orders, prescriptions or consultations for further medical appointments. *Id.* at record dated March 12, 2011, 20:55. Plaintiff was noted as calm and cooperative with no signs or symptoms of pain or distress. *Id.*

23. On March 15, 2011, Plaintiff responded to Health Services complaining of abdominal pain and vomiting after taking Ibuprofen the day before. *Id.* at record dated March 15, 2014, 07:58. Plaintiff also complained of mid-back pain from the alleged fall days prior and rated his pain a 9. *Id.* Plaintiff evidenced some tenderness in his mid-back. *Id.* He was prescribed Ibuprofen and a spine/thoracic x-ray was ordered. *Id.*

24. On March 16, 2011, the results of Plaintiff's CT scan returned showing no acute findings from his fall. *Id.* at record dated March 16, 2011 at 07:47. The scan showed Plaintiff's pre-existing T7 spinal injury, but no new injury was noted. *Id.*

25. On April 11, 2011, Plaintiff continued to complain to Health Services staff that he was experiencing neck and mid-back pain. *Id.* at record dated April 11, 2011, 07:20. On that date, Plaintiff rated his "shooting/stabbing" pain as a 7. *Id.* Upon examination, Plaintiff exhibited full range of motion, tenderness upon palpation, and muscle spasms. *Id.* Plaintiff did not exhibit swelling, trauma, midline tenderness upon palpation, or "step-offs" (where the bones are not lined up properly and form a "step" at the junction of a broken bone that is detectable by palpation). *Id.* Plaintiff was given a hydroxyzine injection to help control muscle spasms and acetaminophen for pain management. *Id.* Health Services personnel also ordered a second

6

spinal/thoracic x-ray. *Id.*

26. On May 5, 2011, Plaintiff received a Chronic Care Visit at Health Services. *Id.* at record dated May 5, 2011, 12:08. On that occasion, Plaintiff complained only of two medical issues: hypertension and blood in his urine. *Id.*

27. On May 17, 2011, Plaintiff responded to Health Services complaining of pain from a fall in the shower. *Id.* at record dated May 17, 2011, 19:59. He described his back pain as a 9 and also reported swelling in his ankles. Physical examination of Plaintiff's back revealed some tenderness upon palpation, but no swelling, redness, lacerations or abrasions. *Id.* X-ray examinations were ordered for Plaintiff's ankles and spine. *Id.* at record dated May 19, 2011, 10:20.

28. On June 2, 2011, Plaintiff was seen for a sick call visit regarding pain and ankle swelling. *Id.* at record dated June 2, 2011, 07:17. At that time, it was noted that Plaintiff's May 19, 2011 x-ray findings were negative for new injuries. *Id.*

29. Plaintiff continued to complain of pain associated with the fall he suffered in the shower on Health Services encounters on June 20, 2011 and July 18, 2011. *Id.* at records dated June 20, 2011, 08:38, and July 18, 2011, 07:16.

30. Plaintiff next had a Chronic Care Visit in Health Services on August 2, 2011. *Id.* at record dated August 2, 2011, 10:46. However, on that occasion, Plaintiff complained only of a neurogenic bladder and hypertension. *Id.*

31. Plaintiff was provided timely and appropriate care for all his medical conditions and injuries while designated to FCI Memphis. Exhibit 1, Graham Decl., at ¶ 17.

## **STANDARD OF REVIEW**

A defendant may move to dismiss a claim "for failure to state a claim upon which relief

can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party.[2] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[3] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[4] Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[5] Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[6] In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]

Ordinarily, a court may not consider matters outside the pleadings unless the motion is converted to a summary judgment motion.

There are, however, exceptions to this general rule. Documents attached to a

---

[2] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).
[3] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).
[4] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).
[5] Fed. R. Civ. P. 8(a)(2).
[6] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).
[7] *Twombly*, 550 U.S. at 555, 570.
[8] *Iqbal,* 556 U.S. at 678.

motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the Plaintiff's claim. . . . Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.[9]

The Court will, therefore, consider the affidavits and medical records provided.

## ANALYSIS

Plaintiff's claims are analyzed under the Eighth Amendment. The Eighth Amendment prohibits the intentional infliction of cruel and unusual punishment on an inmate.[10] The Eighth Amendment proscription on cruel and unusual punishment encompasses an inmate's right to personal safety.[11] An Eighth Amendment claim consists of both objective and subjective components.[12] The objective component requires that the deprivation be "sufficiently serious."[13] The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind."[14] The official's intent must rise at least to the level of deliberate indifference.[15]

The Eighth Amendment thus requires a serious threat to the inmate's personal safety.[16] In explaining this requirement of a serious threat, the Supreme Court has held that an Eighth

---

[9] *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (citations omitted), overruled on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U. S. 506 (2002); *see also Green v. Gandy*, No. 5:10-cv-367-JMG, 2011 WL 4688639, at *3 (E.D. Ky. Oct. 3, 2011); *Bazzy v. IndyMac Mortgage Servs.*, No. 09-CV-13436, 2010 WL 707371, at *1 (E.D. Mich. Feb. 23, 2010).
[10] *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).
[11] *Stewart v. Love*, 796 F.2d 43, 44 (6th Cir. 1982).
[12] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U. S. at 298.
[13] *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.
[14] *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 297, 302-03.
[15] *Farmer*, 511 U.S. at 834; *Wilson*, 501 U. S. at 303.
[16] *Knight v. Gill*, 999 F.2d 1020, 1022 (6th Cir. 1993); *Nelson v. Over*berg, 999 F.2d 162, 165 (6th Cir. 1993); *Marsh v. Arn*, 937 F.2d 1056, 1060 (6th Cir. 1991); *Walker v. Norris*, 917 F.2d 1449, 1454 (6th Cir. 1990); *Roland v. Johns*on, 856 F.2d 764, 769 (6th Cir. 1988); *McGhee v.*

Amendment claim requires a showing that an inmate "is incarcerated under conditions posing a substantial risk of serious harm."[17]  In evaluating the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate this risk in its prisons.[18]

The Supreme Court has also clarified the subjective component: the intent of the prison official.[19]  According to *Farmer*, deliberate indifference requires that the inmate prove that an officer "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[20]

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment."[21]  However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."[22]  "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious

---

*Foltz*, 852 F.2d 876, 881 (6th Cir. 1988); *Stewar*t, 796 F.2d at 44.
[17] *Farmer*, 511 U.S. at 834.
[18] *Helling v. McKinney*, 509 U.S. 25, 36 (1993).
[19] *See, e.g.*, *Farmer*, 511 U.S. at 834. *Cf. Wilson*, 501 U.S. at 299-300; *Caldwell v. Moo*re, 968 F.2d 595, 602 (6th Cir. 1992).
[20] *Farmer*, 511 U.S. at 837.  *Cf. Walker*, 917 F.2d at 1454 (prison official displays deliberate indifference when "he causes unnecessary and wanton infliction of pain on the [inmate] by deliberately disregarding a serious threat to the [inmate]'s safety after actually becoming aware of that threat").
[21] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)
[22] *Estelle*, 429 U.S. at 105.

medical needs.'"[23] "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner."[24]

The objective component of an Eighth Amendment claim requires that a prisoner have a serious medical need.[25] "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention."[26] Alternatively, where a prisoner complains about a delay in medical treatment, the Court will "examine the seriousness of a deprivation by examining the effect of the delay in treatment."[27] "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed."[28] "The 'verifying medical evidence' requirement is relevant [only] to those claims involving minor maladies or non-obvious complaints of a serious need for medical care."[29]

Viewing the allegations of the Complaint in a light most favorable to Plaintiff, the two

---

[23] *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (same).
[24] *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (internal quotation marks and citation omitted).
[25] *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).
[26] *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); see also *Santiago*, 734 F.3d at 590 (same); *Johnson*, 398 F.3d at 874 (same).
[27] *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).
[28] *Id.* (internal quotation marks and alteration omitted); *see also Santiago*, 734 F.3d at 591 ("In a case like this, involving a claim based on the prison's failure to treat a condition adequately, medical proof is necessary to assess whether the delay caused a serious medical injury.") (internal quotation marks omitted).
[29] *Blackmore*, 390 F.3d at 898.

Defendants attempted to lift Plaintiff from his wheelchair and place him in the transport van. Plaintiff alleges that Defendants lost their grip, causing him to fall and land on the concrete on his back. Plaintiff alleges that he sustained injuries to his back and neck that continue to cause him pain.

Because FCI Memphis did not have a handicapped accessible van with a motorized platform to lift wheelchair-bound inmates into the van, it was necessary for the guards to physically lift Plaintiff, a paraplegic, from his wheelchair to load him into the van. Defendants acknowledge that they were unable to lift Plaintiff into the van because he weighs over 200 pounds. (ECF No. 30-2 at 2; ECF No. 30-3 at 2.) They contend, however, that they lifted Plaintiff slowly and in a way that safely balanced his weight. (*Id.*) Defendants allege that when they realized that they could not complete the lift, they lowered Plaintiff back into his wheelchair. (*Id.*) Defendants contend that they did not lose control of Plaintiff, that Plaintiff was not dropped, and that Plaintiff did not fall to the ground. (*Id.*) Defendants state that Plaintiff did not tell them that he was injured and did not request medical assistance. (*Id.*)

Plaintiff's medical records indicate that he reported to the medical department and stated that he was accidentally dropped while being carried to the van for his outside medical appointment. (ECF No. 30-1 at 95.) Plaintiff complained of nagging low back pain. (*Id.*) Plaintiff's examination revealed no skin or musculoskeletal injuries, swelling, or tenderness to touch. (*Id.*) An x-ray was ordered and Plaintiff was given ibuprofen. (ECF No. 31-1 at 96.)

The next morning Plaintiff reported that he was having difficulty breathing and having upper chest, neck, and thoracic pain. (ECF No. 30-1 at 87-88, 90-91.) He was placed on a spinal board with his neck immobilized and transported to the medical department. (*Id.*) Plaintiff

appeared to be in pain and was taken to the hospital to rule out fractured ribs. (*Id.*) Records from the Regional Medical Center demonstrate that Plaintiff received a CT scan that showed no evidence of acute injuries, only old trauma to the ribs and T7 vertebral body. (ECF No. 30-1 at 161.) Plaintiff was discharged to FCI Memphis with no orders, medications, or consults. (ECF No. 30-1 at 85, 166.)

Plaintiff does not allege that more than two guards were required to lift him to and from his wheelchair. Plaintiff's medical records from March 12, 2011, demonstrate that when Plaintiff returned to FCI from the Regional Medical Center, Nurse James McEntee alone transferred Plaintiff from the ambulance stretcher to his wheelchair without incident. (ECF No. 30-1 at 85.) The facts alleged by Plaintiff do not demonstrate that Defendants were aware that they would be unable to lift him into the van or that attempting to lift Plaintiff posed a substantial risk of harm to Plaintiff. There are no allegations that Defendants or Plaintiff knew that it was likely he would be dropped. Plaintiff has not alleged facts demonstrating either a serious risk of harm or deliberate indifference to a serious risk of harm. Immediately after the incident, Plaintiff described Defendants' actions as an "accident" to medical personnel. (ECF No. 30-1 at 95.) When Defendants discovered they were unable to lift Plaintiff successfully, they placed him back in his wheelchair and attempted no more lifts.

Plaintiff has not alleged that he told Defendants that he had sustained injuries or that he needed medical attention. Plaintiff immediately went to the medical department, where he was examined by medical personnel. No swelling, tenderness, or injuries were found. (ECF No. 30-1 at 95.) Plaintiff sustained no injuries that were obvious to FCI medical personnel. No medical employee diagnosed Plaintiff with a serious medical need. When Plaintiff's pain worsened the next day, he was immediately transported to an outside hospital where he received a CT scan.

13

No acute injuries were found, however, and Plaintiff was returned to the prison with no prescriptions or further orders.

Plaintiff Ellis has received medical examinations, medication, and tests. Although Plaintiff has not received all the treatment he desires and continues to complain of pain, a difference of opinion between a prisoner and medical personnel about diagnosis, testing, or treatment fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need.[30]

Plaintiff's allegations for violation of his right to personal safety and for violation of his right to medical care fail to satisfy either the objective or subjective components of an Eighth Amendment claim. Because the Court finds that the Complaint fails to state an Eighth Amendment violation, the Court need not reach Defendants' qualified immunity argument.

## CONCLUSION

Defendants' Motion to Dismiss the *Bivens* claims against them is **GRANTED**. The Clerk shall enter judgment for Defendants Kenneth Christopher and Lee Price.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 30, 2015.

---

[30] *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).